NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| TERRANCE C. GREEN, | Civil Action No.: 18-6129 |
| Plaintiff, | |
| v. | **OPINION & ORDER** |
| SCOTT BESSENT, Secretary Department of the Treasury, Office of the Comptroller of the Currency, | |
| Defendant. | |

**CECCHI, District Judge.**

## I.    INTRODUCTION

This matter comes before the Court on defendant Scott Bessent's[1] ("Defendant") motion for summary judgment (ECF No. 49-2, "Mot."), brought in his official capacity as Secretary of the Department of the Treasury.  Plaintiff Terrance Green ("Plaintiff") opposed Defendant's motion (ECF No. 56, "Opp.").  Defendant replied in support of the motion to dismiss (ECF No. 59, "Reply").  The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b).  For the reasons set forth below, Defendant's motion is **GRANTED**.

## II.    BACKGROUND[2]

This dispute arises out of Plaintiff's allegations that his employer, the Office of the Comptroller of the Currency ("OCC"), discriminated against him based on his race and/or sex and retaliated against him for engaging in Equal Employment Opportunity ("EEO") activity.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Defendant Scott Bessent is automatically substituted for former Secretary Janet Yellen.

[2] Background facts are taken from the pleadings, evidence, and parties' affirmative and responsive Statements of Material Fact, pursuant to Local Civil Rule 56.1.  *See* Defendant's Statement of Material Facts, ECF No. 49-3 ("Def. SMF"); Plaintiff's Response to Defendant's Statement of Material Facts, ECF

### A. Plaintiff's Pay-Related Claims

Plaintiff's pay-related claims center around Plaintiff's belief that he was not sufficiently paid during his employment with OCC. On or about June 11, 2012, OCC hired Plaintiff, a Black man, as a bank examiner in the mid-sized bank division. Def. SMF ¶¶ 1–3.[3] Plaintiff alleges that two other individuals—Dwanda Asberry ("Asberry"), a Black woman hired at the same time as Plaintiff for the same position, and Ryan de France ("de France"), a White man hired to fill Plaintiff's position in the mid-sized bank division after Plaintiff transferred to the large-sized bank division—received higher salaries than Plaintiff. *Id.* ¶¶ 6–7, 10. Both Asberry and de France had more relevant, higher-level experience than Plaintiff, as well as higher prior salaries. *Id.* ¶¶ 12–27, 53. Asberry had six years of prior experience and her salary was $104,975 at her previous position. *Id.* ¶¶ 17, 19. She was paid $107,942 at OCC. *Id.* ¶ 21. De France had over ten years of experience and his most recent salary was $128,128 at his prior position. *Id.* ¶¶ 12–14. His salary was $140,941 at OCC. *Id.* ¶ 15. Plaintiff, however, had five years of experience, and his most recent salary before OCC was $63,484.82. *Id.* ¶¶ 22, 26. At OCC, he was hired at a starting salary of $85,652—reflecting a 35% increase over his previous salary, while Asberry and de France received just 3% and 10% above their prior salaries, respectively. *Id.* ¶ 27.

On June 21, 2016, Plaintiff emailed his then-supervisor requesting an Administratively Determined Pay Increase ("ADPI"). *Id.* ¶ 29. An ADPI is a "compensation tool that managers can use to correct unexplained pay differentials among comparable peers in the same work group," which involves analyzing the "performance, experience, and pay data for the relevant peer work

---

No. 56-1 ("Pl. RSMF"); Plaintiff's Counter Statement of Material Facts, ECF No. 56-2 ("Pl. CSMF"); and Defendant's Response to Plaintiff's Counter Statement of Material Facts, ECF No. 59-1 ("Def. RCSMF").

[3] Given that Plaintiff denied only three of Defendant's Material Facts, the Court will cite to Defendant's Statement of Material Facts.

group." *Id.* ¶¶ 30, 32.  To perform this analysis, the Compensation and Benefits team "gathered data including resumes and previous new hire salary justification forms" for other employees within Plaintiff's work group and work area. *Id.* ¶¶ 34, 37.  Using this data, the Compensation and Benefits team compared Plaintiff's salary to the salaries of his peers. *Id.* ¶¶ 34–37.  As part of her analysis, Rhonda Jones ("Jones"), the Director of Compensation and Benefits for OCC, also reviewed performance evaluations, noting that Plaintiff had a rating of level 3L, the lowest possible rating to still receive a merit increase. *Id.* ¶¶ 43–44.  After conducting the requisite analyses, the Compensation and Benefits team decided to raise Plaintiff's salary to $106,602, which was nearly equivalent to the salary of another colleague—Neha Gosalia, an Asian woman—with the same position, even though she had two more years of relevant experience and had better performance ratings.[4] *Id.* ¶¶ 32–45.  On September 6, 2016, Plaintiff filed an EEO complaint alleging discrimination based on sex and race in violation of the Equal Pay Act ("EPA") and Title VII. *Id.* ¶ 59; Ex. Q.[5]  Despite OCC's action and pay increase, Plaintiff alleged that his new salary was still lower than that of Asberry and de France.  Def. SMF ¶ 59.  The Department of the Treasury investigated the complaint, found no discrimination, and dismissed the complaint in May 2017. *Id.* ¶¶ 59–60; Ex. Q.

### B.  Plaintiff's Non-Pay-Related Claims

Plaintiff also alleges various claims unrelated to the salary disparity.  On January 27, 2015, Plaintiff's then-supervisor, Marva Cummings ("Cummings"), a Black woman, issued a memorandum ("January 27 Memo") advising Plaintiff that his performance might result in a lower

---

[4] Gosalia's base salary was $78,107, and total salary plus geographical adjustment was $103,882.  Def. SMF ¶ 42.  Plaintiff's base salary was increased to $77,248, and to a total salary including geographical adjustment of $106,602. *Id.* ¶ 45.
[5] "Ex." references the exhibits to the Declaration of Alex Silagi in Support of Defendant's Motion for Summary Judgment.  ECF No. 50.

rating on his evaluation if his performance did not improve. Def. SMF ¶ 61. The January 27 Memo described areas where Plaintiff needed to improve his performance and warned that his rating could be lowered to a Level 2. *Id.* ¶¶ 61, 64–66. It noted one instance in which Plaintiff had delayed completing a bank's Community Reinvestment Act ("CRA") evaluation that he had worked on in 2014, despite Plaintiff being granted an additional six weeks to complete the report. *Id.* ¶¶ 62–63. Ultimately, however, Plaintiff's rating was not decreased, and he received a Level 3 rating in his 2015 evaluation. *Id.* ¶ 70.

Subsequently, on May 18, 2015, Plaintiff filed an EEO complaint, alleging racial discrimination based on four alleged theories: (1) In October 2014, Plaintiff's manager denied his request to post an expression of interest for a new position, but allowed other employees to apply; (2) In December 2014, Plaintiff received a performance evaluation that lowered his rating to a Level 3; (3) In January 2015, Plaintiff's supervisor issued the January 27 Memo; and (4) In May 2015, Plaintiff was denied the ability to partake in a training course. *Id.* ¶¶ 87–88. The first two claims were dismissed as untimely (*id.* ¶¶ 90–91), the third claim was dismissed because the January 27 Memo did not qualify as an adverse employment action (*id.* ¶ 92), and the fourth claim was dismissed because Plaintiff failed to rebut the legitimate, nondiscriminatory reason for denying the training request (*id.* ¶ 93). Plaintiff appealed the decision on the third and fourth claims, and the Equal Employment Opportunity Commission ("EEOC") upheld the findings in its final decision. *Id.* ¶¶ 94–95; *see also* Exs. W, X. On April 11, 2018, Plaintiff filed this action, asserting several theories of employment discrimination under the EPA, Title VII, and the New Jersey Law Against Discrimination ("NJLAD"). *See generally* ECF No. 1.

## III.   <u>LEGAL STANDARD</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" demonstrate that there is no genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *see also Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145–46 (3d Cir. 2004). Once the moving party has satisfied this burden, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). The non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56); *see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("To raise a genuine issue of material fact," the opponent must "exceed[ ] the 'mere scintilla' threshold. . . .").

An issue is "genuine" if it is supported by evidence, such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *See id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead,

5

the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322.

## IV.    DISCUSSION

Defendant moves for summary judgment on all of Plaintiff's claims. Defendant argues that Plaintiff's pay-related claims under Title VII and the EPA fail, and that his NJLAD and Title VII discrimination and retaliation claims are procedurally improper or fail on the merits.

### A.  Plaintiff's Pay-Related Claims Fail

#### i.    Plaintiff's Title VII Wage Claim

Plaintiff claims that OCC violated Title VII by paying him less than his coworkers due to gender and/or race discrimination. OCC contends that the salary differential is based instead on legitimate reasons, such as Plaintiff's lower-level positions, less relevant experience, and lower previous salary, and that Plaintiff cannot meet his burden to prove pretext.

Title VII disparate treatment claims are analyzed using the three-step framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The analysis proceeds as follows: (1) the plaintiff must establish a *prima facie* case of discrimination; (2) if the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection;" and (3) if the defendant carries its burden, the plaintiff must show that the nondiscriminatory reason articulated by the defendant is actually pretext for discrimination. *Id.* at 802–04; *see also Sherrod v. Phila. Gas Works*, 57 F. App'x 68, 73 (3d Cir. 2003).

### a. Legitimate, Nondiscriminatory Reason

For the purposes of this motion, Defendant has "assume[d] that Plaintiff has established step one"—a *prima facie* case of discrimination—of the pay-related Title VII claim.  Mot. at 16. Accordingly, the Court turns to the second step of the *McDonnell Douglas* framework.  The Court is satisfied that OCC has provided a legitimate, nondiscriminatory reason for Plaintiff receiving a lower salary than some of his coworkers:  his less-relevant and lower-level prior experience, and a lower previous salary.

Plaintiff does not dispute that his coworkers had more experience and received higher salaries at their previous positions.  Def. SMF ¶¶ 11–24; Pl. RSMF ¶¶ 11–24.  At the time of his hiring, Plaintiff had five years of experience, and his most recent salary was $63,484.82.  Def. SMF ¶¶ 22, 26.  De France, a White man, had over ten years of experience and his prior salary was $128,128.  *Id.* ¶¶ 10, 12, 14.  De France received a 10% increase when he started with OCC.  *See id.* ¶ 15.  Asberry, a Black woman, had six years of experience and her prior salary was $104,975. *Id.* ¶¶ 16–19.  She received only a 3% increase from her prior salary when she started at OCC.  *See id.* ¶¶ 19–21.  Plaintiff, on the other hand, received a 35% increase from his previous salary when he started at OCC, reaching a total salary of $85,652.  *Id.* ¶ 27.  Plaintiff's total salary was subsequently increased to $106,602 after the ADPI analysis.  *Id.* ¶ 45.  Jones, who conducted the ADPI analysis, stated that experience, performance reviews, and prior salary were the driving reasons behind the salary differential that remained after Plaintiff's ADPI increase.  *Id.* ¶ 33; Ex. F ¶¶ 11, 37; Ex. N at 40:3–22.  Notably, Plaintiff admits as such.  Pl. RSMF ¶ 53 (admitting that the differential in salary between Plaintiff, Asberry, and de France was "due to the amount and level of prior work experience").  Additionally, as discussed further below, a review of the backgrounds of Asberry, de France, and Plaintiff also affirms that Plaintiff had less specific

experience with the CRA.  *See* Exs. E, H, J.  Therefore, the OCC's legitimate reason for the salary differential—that Plaintiff's coworkers had more relevant and higher caliber previous experience, and received higher salaries at their previous positions—is sufficient to meet the "relatively light burden" of production.  *Fuentes*, 32 F.3d at 763.

### b. Pretext

Thus, because Defendant has established a legitimate, nondiscriminatory basis for the difference in salary, the burden shifts to Plaintiff to show that the proffered reasons are pretext for discrimination.  To avoid summary judgment, the plaintiff must produce evidence—direct or circumstantial—which (1) casts sufficient doubt upon the proffered reason so that a fact finder could reasonably conclude that each reason was fabrication or (2) allows a factfinder to infer that discrimination was "more likely than not a motivating or determinative cause of the employer's action."  *Fuentes*, 32 F.3d at 762; *see also Saunders v. Apothaker & Assocs., Inc.*, 556 F. App'x 98, 101 (3d Cir. 2014).  Plaintiff must show "not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997).

Plaintiff has failed to show that OCC's reasoning was pretext for gender and/or race discrimination.  Indeed, as stated above, Plaintiff concedes that OCC's proffered reasons dictated the salary differential of which he complains.  Def. SMF ¶ 53 ("OCC's reasons for the differential in salary between Plaintiff, Asberry, and de France is due to the amount and level of prior work experience as reflected on Asberry, de France, and Plaintiff's respective resumes and their prior salary history."); Pl. RSMF ¶ 53 (admitting fact).  Without factual support, Plaintiff claims that "[n]o evidence was ever provided as to how the prior experience of the candidates were evaluated"

8

and that "[P]laintiff had more specific experience related to the task he was being hired for."  Opp. at 6.

However, the evidence provided by Defendant contradicts Plaintiff's claims.  Plaintiff was hired as a bank examiner focused on the CRA.  Def. SMF ¶ 5.  Asberry's prior experience directly involved the CRA, as she was the CRA Officer at a major bank, a CRA Analyst prior to that position, and held multiple other community development roles earlier in her career.  *Id.* ¶¶ 18–20; Ex. H (Asberry's resume providing detail on multiple CRA-specific positions she previously held).  In fact, Asberry's entire career prior to OCC involved CRA-related work.  *See id.*  Similarly, de France was the CRA and Community Development Officer at another major bank, and a CRA Analyst in his two prior positions.  Def. SMF ¶¶ 12–14; Ex. E (de France's resume detailing his extensive CRA responsibilities, that he specializes in the CRA, and that he is a "CRA Wiz").  Conversely, Plaintiff's resume notes only that he "[c]onduct[ed] CRA examinations" in his prior role as a bank examiner.  Def. SMF ¶ 25; Ex. J (Plaintiff's resume containing only one line regarding the CRA).  Asberry and de France each had six years of CRA-specific work experience.  *See* Ex. H; Ex. E; Ex. G.  In contrast, Plaintiff admitted that he conducted CRA examinations for only three of the five years he worked at his previous position.  Ex. B. at 33:1–14, 34:11–35:6.  There is no evidence that Plaintiff had "more specific experience," and if anything, his resume reflects less experience and less-relevant CRA-specific experience than Asberry and de France.  *See, e.g.*, Ex. N at 51:2–52:9 (Jones testifying that "Mr. DeFrance [sic] had a lot more experience than Mr. Green . . . .  His experience was just a lot stronger than Mr. Green's."); Ex. F ¶ 37 ("The Complainant came on [b]oard to the OCC in 2012 with experience doing bank examination work, but it was not at the same level as that of Asberry and de France.").

Regardless, Plaintiff's disagreement with the OCC's evaluation of his prior experience, *see* Opp. at 7 ("The plaintiff never received sufficient salary adjustments to bring his salary up to an equal level."), is not equivalent to demonstrating discriminatory animus.  *Neiderlander v. Am. Video Glass Co.*, 80 F. App'x 256, 259 (3d Cir. 2003) ("[T]he plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent." (quoting *Fuentes*, 32 F.3d at 765)).  Plaintiff is therefore unable to sufficiently cast doubt on the proffered reason for the salary differential.

Turning to the second method of proving pretext, Plaintiff does not offer evidence that his gender and/or race were "more likely than not a motivating or determinative cause" of his lower salary.  Plaintiff plainly admits that he never heard statements from anyone at OCC that suggested race or sex played a factor in setting salaries.  Def. SMF ¶ 55 ("No person has made any statement or comment to Plaintiff that would lead Plaintiff to the conclusion that race was the reason why the Agency paid Mr. de France a higher salary than Plaintiff."); *id.* ¶ 56 (same as to Asberry); Pl. RSMF ¶¶ 55–56 (admitting facts).  Plaintiff fails to provide any evidence beyond his speculation that discrimination occurred, which is insufficient to meet his burden.  *See Sutton v. Bd. of Educ. of the City of Plainfield*, No. CV 13-5321, 2015 WL 9308251, at *8 (D.N.J. Dec. 22, 2015) (holding plaintiff did not establish pretext and granting summary judgment where plaintiff only pointed to "subjective beliefs and speculations" without "any documents or other testimony" that defendant engaged in discrimination).  Therefore, summary judgment is granted as to Plaintiff's Title VII pay-related claims.

### ii. Plaintiff's EPA Claim

Turning to Plaintiff's EPA claim, which is based on the same salary differential as his Title VII claim, Defendant argues that he has sufficiently proven the affirmative defense that the salary differential is based on a "factor other than sex."

EPA claims follow a slightly different two-step burden-shifting paradigm. The plaintiff must first establish a *prima facie* case by demonstrating that employees of the opposite sex were paid differently for performing "equal work." *EEOC v. Del. Dept. of Health and Social Servs.*, 865 F.2d 1408, 1414 (3rd Cir. 1989). For the purposes of this motion, Defendant has "assume[d] that Plaintiff has established step one" of the EPA claim. Mot. at 16. As to step two, "[t]he burden of persuasion then shifts to the employer to demonstrate the applicability of one of the four affirmative defenses specified in the [EPA]." *Id.* at 1413–14.[6] In order to prevail at the summary judgment stage, the affirmative defense must be established "so clearly that no rational jury could find to the contrary." *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000) (citation omitted). One such affirmative defense at issue here is establishing that a "differential [is] based on any other factor other than sex." 29 U.S.C. § 206(d)(1). "Acceptable factors other than sex include education, experience, prior salary, or any other factor related to performance of the job." *Dubowsky v. Stern, Lavinthal, Norgaard & Daly*, 922 F. Supp. 985, 990 (D.N.J. 1996). Contrary to Title VII, with an EPA claim, the employer "must establish that an aggrieved employee . . . is *not* being paid less *because of* [his] sex." *Vereen v. Woodland Hills Sch. Dist.*, No. 06-462, 2008 WL 794451, at *25 (W.D. Pa. Mar. 24, 2008). Then, if an affirmative defense is successfully

---

[6] There are four affirmative defenses specified in the EPA as valid reasons for unequal pay: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1).

raised, the plaintiff must provide evidence that the explanations were pretextual. *Puchakjian v. Twp. of Winslow*, 804 F. Supp. 2d 288, 298 (D.N.J. 2011), *aff'd*, 520 F. App'x 73 (3d Cir. 2013).

Here, OCC has proven that the salary differential was based on factors other than sex. Jones—the individual who conducted the ADPI analysis leading to Plaintiff's pay raise—stated that Plaintiff's salary was lower than Asberry and de France's because of his less relevant and lower-level previous experience, his lower performance ratings, and his substantially lower prior salary. Ex. F ¶ 11 (Jones testifying that "[o]ur analysis was based on how his salary and relevant experience compared to other individuals in his work group."), *id.* ¶ 37 ("While Mr. Green has worked in CRA his positions and complexity of his work was not at the same level as Asberry and de France."); Ex. N at 40:3–22 (Jones explaining that when she conducted the ADPI analysis, Plaintiff's colleague "had more experience than him and . . . her performance ratings were higher than his"); *see also Dorsey v. The Salvation Army*, No. 04-844, 2005 WL 181912, at *4 (E.D. Pa. Jan. 27, 2005) (granting summary judgment on EPA claim where the defendants submitted an affidavit stating the reasons a co-worker had a higher salary were her education and experience, and where the plaintiff failed to "produce any meaningful evidence establishing that it is false").

Indeed, as noted, Plaintiff admits that the salary differential is mainly because of prior experience and prior salary. Def. SMF ¶ 53 ("OCC's reasons for the differential in salary . . . is due to the amount and level of prior work experience . . . ."); Pl. RSMF ¶ 53 (admitting fact); Ex. B at 95:17–21 (Plaintiff's testimony that "[he] believe[s] that they basically used [Asberry's] prior salary and that is what the driving factor of the salary that she was offered which was higher than [his].");  *see also Rhoades v. Young Women's Christian Ass'n*, 423 F. App'x 193, 198 (3d Cir. 2011) (granting summary judgment because no reasonable jury would believe that the salary differential was based on plaintiff's sex where the comparator had more prior experience).

Plaintiff's own mere speculation is insufficient to raise a genuine dispute of material fact as to the reason for the salary differential. Thus, OCC has established the affirmative defense that the salary differential was based on a "factor other than sex."

For the same reasons as discussed above, Plaintiff has not provided any evidence sufficient to defeat summary judgment to establish that OCC's reasons were pretext for discrimination. *See supra* Section IV.A.i.b. Therefore, summary judgment is granted as to Plaintiff's EPA claims. *See, e.g.*, *Summy-Long v. Pa. State Univ.*, 226 F. Supp. 3d 371, 413–14 (M.D. Pa. 2016) (acknowledging that the employer's burden is greater under the EPA, but stating "when a Title VII claim is so similar to and tends to merge with the Equal Pay Act claim, for instance, by claiming pay discrimination but being defeated by a legitimate non-discriminatory reason that would also satisfy one of the Equal Pay Act's statutory defenses, a loss on the Title VII claim is likely fatal for the plaintiff"), *aff'd*, 715 F. App'x 179 (3d Cir. 2017).

## B.  Plaintiff's Non-Pay-Related Claims Fail

Plaintiff's complaint also asserts various alleged violations of the NJLAD and Title VII unrelated to his salary:  (i) he was not allowed to apply for a new position in October 2014 (*id.* ¶ 27(a)); (ii) he received an unfair performance review in December 2014 (ECF No. 1 ¶ 27(b)); (iii) his managers made "inappropriate and untrue accusations" about him (*id.* ¶¶ 33, 47); (iv) the OCC purportedly did not "consider all of the claims set forth in Complaint No. OC-15-1160" (*id.* ¶ 46); (v) he received an unfair performance review in the January 27 Memo (*id.* ¶¶ 26, 27(c)); (vi) his request for a second training was denied on May 27, 2015, in retaliation for previously filing the EEO complaint (*id.* ¶¶ 27(d), 28).

### i.  Plaintiff's Opposition Failed to Address Numerous Arguments

To begin, Plaintiff does not oppose many of the arguments raised by Defendant in its Motion.  In so doing, Plaintiff has waived his ability to present arguments as to why Defendant's Motion should not be granted as to those claims.  *Player v. Motiva Enters., LLC*, 240 F. App'x 513, 522 n.4 (3d Cir. 2007); *Fischer v. G4S Secure Sols. USA, Inc.*, 614 F. App'x 87, 91 n.3 (3d Cir. 2015) ("[B]ecause [plaintiff] did not address the [claims] at all in opposing summary judgment, [plaintiff] has abandoned any argument rooted in those unfiled charges."); *Yucis v. Sears Outlet Stores, LLC*, No. 18-cv-15842, 2019 WL 2511536, at \*4 & n.4 (D.N.J. June 18, 2019) (collecting cases and finding "Plaintiff abandoned [her] claims because she did not respond to Defendant's arguments on those claims or mention them at all in her brief"), *aff'd as modified*, 813 F. App'x 780 (3d Cir. 2020).  Nonetheless, the Court will address the merits of the arguments, and finds that summary judgment should be granted as to all of Plaintiff's non-pay-related claims.

### ii.  Plaintiff's NJLAD Claims Are Preempted

Federal employees cannot bring state law discrimination claims that complement those of Title VII against their federal employer.  Therefore, Plaintiff cannot bring any claims under the NJLAD.  *See, e.g.*, *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976) (holding that Title VII of the "Civil Rights Act of 1964 . . . provides the exclusive judicial remedy for claims of discrimination in federal employment"); *see also Reiser v. N.J. Air Nat'l Guard*, 152 F. App'x 235, 239 (3d Cir. 2005) (explaining that because the plaintiff was a federal employee, "NJLAD claims are preempted by Title VII"); *Gavina v. Potter*, No. 05-2704, 2006 WL 8457297, at \*5 (D.N.J. Aug. 8, 2006) (dismissing NJLAD claims "[b]ecause Title VII acts as a pre-emptive and exclusive remedy for federal employees seeking remedies in employment discrimination claims");

*Scalafani v. U.S. Dep't of the Army*, No. 09-6360, 2011 WL 1081253, at *4 (D.N.J. Mar. 21, 2011) (holding that because the plaintiff was a federal employee, "Plaintiff is barred from asserting claims for discrimination or retaliation against Defendants under NJLAD"); *Hoffman v. Lyons*, No. 08-5248, 2009 WL 3029759, at *7 (D.N.J. Sept. 15, 2009) (collecting cases and explaining that "claims under the LAD by a federal employee are pre-empted and must be dismissed").

### iii.  Plaintiff Failed to Exhaust Four Theories of Discrimination

Plaintiff failed to exhaust four theories of alleged discrimination.  Prior to bringing a Title VII claim in federal court, a federal employee must contact an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. § 1614.105(a)(1).  "This 45-day time limit operates akin to a statute of limitations: a claim brought more than 45 days after the date it accrued will be barred."  *Winder v. Postmaster Gen. of U.S.*, 528 F. App'x 253, 255 (3d Cir. 2013).  If the counseling process is unsuccessful, a formal complaint must be filed with the EEOC within 15 days of the conclusion of the counseling process.  *Broadnax v. Sec'y U.S. Dep't of Veterans Affs.*, 860 F. App'x 800, 802–83 (3d Cir. 2021).  Finally, to exhaust administrative remedies, an employee must "appeal the agency's final decision to the EEOC or file a civil action in federal district court within ninety days of the agency's decision."  *Id.*

Two of Plaintiff's theories were untimely when raised to the EEO counselor in March 2015:  that his manager denied his request to apply for a new position in October 2014 (ECF No. 1 ¶ 27(a)), and that his manager issued him a poor performance review in December 2014 (*id.* ¶ 27(b)).  Def. SMF ¶ 73 ("On or about March 10, 2015, plaintiff contacted an EEO counselor alleging race-based discrimination . . . ."); Pl. RSMF ¶ 73 (admitting fact).  By

the time these incidents were raised to the counselor in March 2015, both had occurred more than

45 days prior.[7]  *See Burkhart v. Potter*, 166 F. App'x 650, 652 n.4 (3d Cir. 2006).

Plaintiff's theory of discrimination regarding "inappropriate and untrue accusations" about

him (ECF No. 1 ¶¶ 33, 47) seems to center around a "demeaning email" from June 2014 about a

travel issue which he contends "ma[d]e it appear plaintiff had done something wrong when he had

not done anything wrong." *Id.* ¶ 33.  Although this incident occurred in June 2014, Plaintiff failed

to raise this claim in his 2015 EEO complaint.[8]  *See generally* Ex. S.  Plaintiff also alleges that the

EEOC "fail[ed] to consider all of the claims set forth in Complaint No. OC-15-1160-F" and

therefore defendant "discriminated against plaintiff because of his race and or sex."  ECF No. 1

¶ 46.  This claim was not raised when he appealed the agency's final decision to the EEOC.  *See*

*generally* Ex. W (Plaintiff's letter regarding EEO Appeal of OCC-15-1160); Ex. X (EEOC

Decision on Appeal).  Therefore, as to the above theories of discrimination, Plaintiff failed to

exhaust administrative remedies and Defendant's motion for summary judgment is granted as to

these claims.  *See Kirman v. United Parcel Serv., Inc.*, No. CV152357, 2015 WL 7720494, at *7

(D.N.J. Nov. 30, 2015) ("A plaintiff's claim brought in the district court must thus fall fairly within

the scope of the prior EEOC complaint, or the investigation arising therefrom." (internal quotation

marks, brackets, and citation omitted)).

---

[7] Plaintiff also failed to exhaust administrative remedies as to these claims because he did not file an appeal within 30 days of when the EEOC dismissed these claims, nor did he file a civil action with a federal district court within 90 days of the agency's decision.  *See Broadnax v. Sec'y U.S. Dep't of Veterans Affs.*, 860 F. App'x 800, 803 (3d Cir. 2021).  The agency concurred with the dismissal of these claims in a decision dated January 28, 2016.  Ex. V at 1–2.  Plaintiff failed to appeal within 30 days; indeed, Plaintiff *did not* appeal the dismissal of these two claims.  *See* Exs. W, X; Def. SMF ¶¶ 90, 94; Pl. RSMF ¶¶ 90, 94. Similarly, Plaintiff failed to file a federal court action within 90 days of the agency's 2016 decision— Plaintiff filed this lawsuit in April 2018.  *See* ECF No. 1.

[8] Regardless, even if Plaintiff's contentions regarding the "inappropriate and untrue accusations" had been raised to the EEO counselor, they would have been untimely as more than 45 days had elapsed.  Plaintiff alleges the conduct occurred in June 2014 (ECF No. 1 ¶ 33), but Plaintiff did not contact an EEO counselor until March 2015 (*id.* ¶ 25; *see also* Def. SMF ¶ 73; Pl. RSMF ¶ 73), well after the 45-day time limit.

#### iv. Plaintiff's Disparate Treatment Claims

Turning to Plaintiff's disparate treatment claims, Plaintiff alleges that he experienced race and/or sex-based discrimination pursuant to Title VII when Cummings issued the January 27 Memo, notifying him that he might receive a lower rating in a future evaluation, and when his acting manager, Jason Sisack ("Sisack"), denied Plaintiff's request for a second training on May 27, 2015.

To establish a *prima facie* case for a discrimination/disparate treatment claim, the plaintiff must establish: "he/she (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) the adverse employment action was made under circumstances that give rise to an inference of unlawful discrimination." *Rodriguez v. Nat'l R.R. Passenger Corp.*, 532 F. App'x 152, 153 (3d Cir. 2013); *see also Spangler v. City of Phila.*, 523 F. App'x 142, 145 (3d Cir. 2013) (citing *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003)).

#### a. Adverse Employment Action

Defendant argues that the above theories of discrimination fail because neither the January 27 Memo nor the denial of training are "actionable adverse actions." Mot. at 28–30. Defendant does not present arguments disputing whether Plaintiff met the requirements of the first two prongs of a *prima facie* case of discrimination. Accordingly, the Court will focus on the remaining prongs. An adverse employment action must result in "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Pagan v. Gonzalez*, 430 F. App'x 170, 172 (3d Cir. 2011) (citation omitted).

17

Here, the January 27 Memo merely warned Plaintiff that his rating could *potentially* be downgraded from a Level 3 to a Level 2.  Ex. R ("This memorandum provides notice that your performance during this rating period *may* lead to a 2 level rating . . . ." (emphasis added)).  Plaintiff has not presented evidence that the January 27 Memo *actually* impacted the conditions of his employment.[9]  Indeed, Plaintiff admits that he ultimately received a Level 3 rating.  Def. SMF ¶ 70; Pl. RSMF ¶ 70.  To demonstrate the lack of repercussions from the January 27 Memo, Plaintiff applied for a transfer to another unit in 2015, and OCC selected him for the opportunity.  Def. SMF ¶¶ 71–72.  Under these circumstances, the January 27 Memo does not constitute an adverse employment action.  *See, e.g.*, *Walker v. Centocor Ortho Biotech, Inc.*, 558 F. App'x 216, 219–20 (3d Cir. 2014) ("A negative evaluation, by itself, is not an adverse employment action . . . ."); *Reynolds v. Dep't of Army*, 439 F. App'x 150, 153 (3d Cir. 2011) (finding that a plaintiff being placed on a performance improvement plan, which was a "method of conveying to an employee the ways in which that employee can better perform the duties he or she already has," does not constitute an adverse employment action).

Similarly, Plaintiff has presented no evidence that being denied a second training caused a significant change in employment status.  Plaintiff does not demonstrate that Sisack's denial of the training caused any economic harm, a change in Plaintiff's responsibilities, a denial of promotional opportunities, or a change in employment status.  *See, e.g.*, *Ford v. Cnty. of Hudson*, 729 F. App'x 188, 195 (3d Cir. 2018) ("The denial of an opportunity to become marginally more

---

[9] Plaintiff seems to disagree with Cummings's use of his work in 2014 to evaluate his performance in 2015.  Opp. at 3 ("[The January 27 Memo] was inappropriately issued because it was based on assignments that occurred during the previous performance rating cycle . . . ."); Pl. CSMF ¶ 15.  However, at most, this amounts to a disagreement with procedure, which is outside the Court's purview.  *Shahin v. State of Delaware Dep't of Fin.*, 619 F. App'x 91, 94 (3d Cir. 2015) ("[The Court does] not sit as a super-personnel department that reexamines an entity's business decisions; rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior.") (quotation marks omitted).

18

efficient in the execution of [plaintiff's] duties does not constitute an adverse employment action, particularly where no evidence in the record suggests that any conditions or privileges of her employment were affected as a result."); *Lampkin v. Donahoe*, No. CV145686, 2016 WL 7030430, at *13 (D.N.J. Dec. 1, 2016) (finding denial of training did not constitute adverse employment action).

### b. Inference of Discrimination

Plaintiff similarly fails to present evidence sufficient to establish the final prong of a *prima facie* case of a disparate treatment claim:  that the circumstances could create an inference of discrimination.  "A plaintiff may show circumstances giving rise to an inference of discrimination with any kind of relevant evidence, including 'comparator evidence, evidence of similar racial discrimination against other employees, or direct evidence of discrimination from statements or actions by [the plaintiff's] supervisors suggesting racial animus.'"  *McFadden v. Whole Foods Mkt. Grp., Inc.*, No. 19-1103, 2021 WL 736899, at *7 (E.D. Pa. Feb. 25, 2021) (alteration in original) (quoting *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 703 n.2 (3d Cir. 2010)); *Starnes v. ThredUP Inc.*, No. CV 22-4859, 2023 WL 2920279, at *3 (E.D. Pa. Apr. 12, 2023) (citing same standard as to gender-based discrimination).  Comparator evidence is "evidence that defendant treated 'similarly situated' individuals not within plaintiff's protected class more favorably than it treated plaintiff."  *Darby v. Temple Univ.*, 216 F. Supp. 3d 535, 542 (E.D. Pa. 2016) (citing *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 881 (3d Cir. 2011)).

Here, Plaintiff fails to show that "similarly situated" individuals were treated more favorably—namely, that White and/or female individuals' requests for training were granted, or that White and/or female individuals did not receive a disciplinary action similar to the January 27 Memo.  Plaintiff admits that there were no statements made by OCC employees that indicated

discriminatory animus. *See, e.g.*, Ex. B at 140:14–23 ("He is a White man and I'm a Black man. I couldn't take on any other factors. That's all I'm left with, especially since he approved it and then decided to disapprove it.").[10] Plaintiff concedes that the "primary basis" and "driving factor" for the issuance of the January 27 Memo was Plaintiff's delay on a project from 2014 (Def. SMF ¶¶ 62, 67; Pl. RSMF ¶¶ 62, 67), signifying the lack of a discriminatory motive. Regarding the training, Plaintiff admits that Sisack denied the training request because of the January 27 Memo. Def. SMF ¶ 79; Pl. RSMF ¶ 79. Plaintiff's speculation is insufficient to establish the requisite inference of discrimination. *Wilson v. Blockbuster, Inc.*, 571 F. Supp. 2d 641, 647 (E.D. Pa. 2008) ("A plaintiff's subjective belief that race played a role in an employment decision is not, alone, sufficient to establish an inference of discrimination." (citing *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000))). Therefore, summary judgment is granted as to these two theories of discrimination for Plaintiff's failure to establish a *prima facie* case.

### v. Plaintiff's Retaliation Claim

Plaintiff contends that Sisack denying his request for a second training was in retaliation for Plaintiff filing an EEO complaint in May 2015 against Cummings. Defendant argues that it has established a legitimate reason for the training's denial, and that Plaintiff is "unable to show that the proffered explanation is mere pretext." Mot. at 32.

The *McDonnell Douglas* burden-shifting framework applies to retaliation claims under Title VII. *See, e.g.*, *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022)

---

[10] Plaintiff appears to claim that Sisack initially approved the training, and later denied it. ECF No. 1 ¶ 27 (d). However, he fails to present evidence of the initial approval. Further, he admits that Sisack approved Plaintiff's ability to submit *requests* for the trainings. Def. SMF ¶ 75 ("Plaintiff e-mailed Sisack on February 10, 2015, expressing his intent to apply for two training classes, and Sisack said he was fine with Plaintiff submitting the requests."); Pl. RSMF ¶ 75 (admitting fact); *see also* Ex. L (Sisack responding to Plaintiff's email requesting approval to submit training requests, stating "I'm good with your training requests").

([Plaintiff's] retaliation claims . . . are controlled by the three-step burden-shifting framework established in *McDonnell Douglas*."). As discussed below, even if Plaintiff establishes the first step of the framework—a prima facie case of discrimination—Plaintiff fails on steps two and three. At step two, Defendant has sufficiently "articulate[d] some legitimate, nondiscriminatory reason for the employee's rejection;" and, at step three, Plaintiff has not shown that the nondiscriminatory reason articulated by Defendant is actually pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802–04; *see also Sherrod v. Phila. Gas Works*, 57 F. App'x 68, 73 (3d Cir. 2003).

### a.  Legitimate, Nondiscriminatory Reason

Even if Plaintiff has established a *prima facie* case of retaliation, Defendant has upheld its burden under the second step of the *McDonnell Douglas* standard to establish a legitimate, nondiscriminatory reason for the denial of Plaintiff's second training.

Sisack stated he denied the training because after the January 27 Memo, Sisack believed that Plaintiff should be focusing on improving his work performance and that the agency should not spend additional money on another course until Plaintiff's performance improved. Def. SMF ¶ 79; *see also* Ex. T ¶ 16 ("I felt it would not be appropriate to spend additional agency money and that an external course was not the best use of Terrance's time while he was still under [the January 27 Memo]"); *id.* ¶ 21 ("The only reason the 2nd course was denied was because Terrance was working under a notice that he was tracking to an unsatisfactory performance rating. . . ."). Given that Sisack only had "one day left as the acting manager of the team," he would not have been able to subsequently monitor Plaintiff's performance. Ex. T ¶ 16. Thus, Sisack thought granting Plaintiff's request for the first training but denying the second would be a "fair balance." *Id.* This evidence is sufficient to meet Defendant's "relatively light burden" of production to establish a

legitimate, nondiscriminatory reason for Sisack's denial of the training. *See Fuentes*, 32 F.3d at 763.

### b. Pretext

Turning to step three of the burden-shifting standard, Plaintiff has failed to rebut the legitimate, nondiscriminatory reason Defendant has provided for why Sisack denied the training. Def. SMF ¶ 82 ("Plaintiff has no basis to say that Sisack's denial of Plaintiff's second training request was based on race other than the fact that Sisack is a White man and Plaintiff is a Black man."); Pl. RSMF ¶ 82 (admitting fact). Plaintiff speculates that Cummings, who issued the January 27 Memo and against whom Plaintiff filed his EEO complaint, was involved in Sisack's denial of the training request. *See* Ex. B at 140:24–141:13. However, Plaintiff has pointed to no evidence to support that contention. Indeed, he *admits* to such lack of evidence. *See* Def. SMF ¶¶ 74–79; Pl. RSMF ¶¶ 74–79; Def. SMF ¶ 83 ("While Plaintiff believes that Sisack's denial of his second training request was in retaliation for bringing an EEO complaint against Marva Cummings, Plaintiff 'cannot prove that' and has no facts about that issue."); Pl. RSMF ¶ 83 (admitting fact). In fact, Cummings's affidavit states that she "was not involved in approving Mr. Green's training request" and that she had "no knowledge of the training request or when it was approved, since [she] was not managing" the relevant team at that time. Ex. U ¶¶ 13, 15. Mere speculation, which is all that Plaintiff can muster, is insufficient to establish pretext. *Sutton*, 2015 WL 9308251, at *8 (granting summary judgment because Plaintiff "only points to . . . subjective beliefs and speculations that Defendant[] engaged in racial discrimination").

### C. Plaintiff's Hostile Work Environment Claim Fails

Plaintiff's complaint makes cursory references to a "hostile work environment based on race and or sex." ECF No. 1 ¶ 2(d).[11] Plaintiff argues in his opposition that "how he was treated in the wage adjustment process, evaluation process, and ability to obtain education enhancements to do his job" amounted to a hostile work environment. Opp. at 8. Defendant argues that Plaintiff did not plead a hostile work environment claim in his complaint, and even if he did, the claim fails on the merits. Mot. at 35–36.

To establish a hostile work environment claim, "a plaintiff must show that 1) the employee suffered intentional discrimination because of his/her [protected characteristic], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability" on the part of the employer. *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (internal quotation marks and citation omitted); *see also Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

As discussed throughout this Opinion, Plaintiff fails to present evidence of intentional discrimination and discriminatory animus. No reasonable jury could find severe or pervasive discrimination from the evidence presented. *See, e.g.*, *Wood v. Univ. of Pittsburgh*, No. CIV.07-0899, 2009 WL 3400944, at *5 (W.D. Pa. Oct. 21, 2009) (granting summary judgment on hostile work environment claim where "Plaintiff admitted that she never heard anyone at work make a gender or sex-based comment" and the only evidence she had to support her claims was her own speculation), *aff'd*, 395 F. App'x 810 (3d Cir. 2010); *Wheeler v. Voicestream Wireless Servs.*,

---

[11] Since no further details are provided in the complaint, it is assumed that any hostile work environment claim would be based on the same factual allegations in support of Plaintiff's other claims.

23

No. 3:03-CV-1916, 2005 WL 1240797, at *13 (M.D. Pa. May 24, 2005) (granting summary judgment on hostile work environment claim where there was "no evidence that Plaintiff was ever physically threatened or humiliated" and "[t]he evidence submitted simply does not demonstrate that Plaintiff's work place became so abusive as to change the terms of her employment"). Thus, to the extent Plaintiff attempts to plead a hostile work environment claim, it also fails. *See Grant v. U.S. Postal Serv.*, No. 19-9107, 2020 WL 133082, at *4 (D.N.J. Jan. 13, 2020) (finding hostile work environment and disparate treatment claims fail "for the same reasons" because "there are no factual allegations supporting an inference that Defendants intentionally discriminated against Plaintiff").

## V.    CONCLUSION

For the reasons set forth above, the Court grants Defendant's motion for summary judgment.

**Accordingly**, **IT IS**, on this 27th day of March, 2025,

**ORDERED** that Defendant's motion for summary judgment (ECF No. 49) is **GRANTED**; and it is further;

**ORDERED** that the Clerk of the Court shall mark this case as **CLOSED**.

**SO ORDERED.**

*/s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**

24